UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00186-HBB

STEPHANIE L. CARTER                                                    PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                         DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Stephanie L. Carter ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 14) and Defendant (DN 19) have filed a Fact and Law Summary.   For the reasons that follow, the Court concludes that a prejudgment remand, under sentence six of 42 U.S.C. § 405(g), is appropriate.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered March 4, 2020 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance Benefits on June 3, 2014 (Tr. 342, 399, 568-69).   She also filed an application for Supplemental Security Income on June 18, 2014 (Tr. 355, 399).   Plaintiff alleged that she became disabled on September 15, 2013, as a result of bipolar disorder, hysterectomy, and signs of Crohn's Disease (Tr. 342, 355, 604).   Both applications were denied initially on October 14, 2014 and upon reconsideration on December 12, 2014 (Tr. 399).   Plaintiff then filed a written request for hearing on February 3, 2015 (Id.).

Administrative Law Judge William C. Zuber ("ALJ") conducted a hearing on February 14, 2017, in Louisville, Kentucky (Tr. 399).   Plaintiff and her non-attorney representative, Percell Williams, appeared at the hearing (Id.).   William R. Harpool, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated August 2, 2017, the ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014 (Tr. 401).   The ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 399-410).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 15, 2013, the alleged onset date (Tr. 401).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: bipolar disorder and polysubstance dependence (Id.).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).   More specifically, the ALJ explained why Plaintiff did not meet or medically equal Listing 12.04 (Tr. 402-03).

2

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: is limited to simple routine one to four step job tasks; no fast-paced or quota driven work; limited to occasional contact with co-workers and supervisors; no contact with the general public; any changes in work routine or environment would be rare and gradually introduced; and can sustain concentration, persistence, and pace for two hour periods (Tr. 403).   Additionally, the ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any of her past relevant work (Tr. 409).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 409-10).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from September 15, 2013 through the date of the decision (Tr. 410).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 494-95).   The Appeals Council granted Plaintiff's request for review, vacated the hearing decision, and remanded the case to an Administrative Law Judge with instructions to: 1) give further consideration to the treating and non-treating source opinions regarding Plaintiff's mental impairments and explain the weight given to such opinion evidence; 2) further evaluate Plaintiff's alleged mental symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms; 3) if necessary, obtain evidence from a psychological expert related to the nature and severity of and functional limitations resulting from the Plaintiff's mental

impairment; and 4) if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the Plaintiff's occupational base (Tr. 418-20).

On remand, the ALJ conducted a video hearing from Louisville, Kentucky, on June 26, 2018 (Tr. 239).   Plaintiff and her counsel, Charles Dale Burchett, participated from Bowling Green, Kentucky (Id.).   William R. Harpool, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated October 12, 2018, the ALJ again evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 239-54).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 15, 2013, the alleged onset date (Tr. 241).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: polysubstance abuse, bipolar disorder, and right toe fracture with nonunion (Id.).   The ALJ also determined that Plaintiff's history of appendicitis with subsequent appendectomy surgery and her history of uterine prolapse with subsequent hysterectomy are "non-severe" impairments within the meaning of the regulations (Tr. 242).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 242).   The ALJ explained why Plaintiff did not meet or medically equal Listings 1.06 and 12.04 (Tr. 242-44).

At the fourth step, the ALJ found that Plaintiff has the RFC to perform light work except: she is capable of simple routine one to four step tasks but no fast-paced or quota driven work; she

is restricted to occasional climbing of ramps and stairs; she is limited to occasional stooping, crouching, crawling, kneeling and balancing; she is restricted to no climbing of ladders, ropes, or scaffolding; she is restricted to occasional use of the right lower extremity for operation of foot controls; she is limited to occasional exposure to dangerous machinery/unprotected heights; she could tolerate occasional contact with co-workers and supervisors but no contact with the general public; any changes in her work routine and environment would be rare and gradually introduced; and she can sustain concentration, persistence, and pace for two hour periods (244).  The ALJ relied on testimony from the vocational expert to find with this RFC Plaintiff is unable to perform any past relevant work (Tr. 253).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 253-54).  The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.).  Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from September 15, 2013 through the date of the decision (Tr. 254).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 565-67).  The Appeals Council denied Plaintiff's request for review (Tr. 1-5).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d

680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

## The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than twelve (12)
> months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923

(6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential

evaluation process for evaluating a disability claim.  *See* "Evaluation of disability in general," 20

C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable
impairment or combination of impairments that satisfies the
duration requirement and significantly limits his or her
ability to do basic work activities?

3)   Does the claimant have an impairment that meets or
medically equals the criteria of a listed impairment within
Appendix 1?

4)   Does the claimant have the residual functional capacity to
return to his or her past relevant work?

5)   Does the claimant's residual functional capacity, age,
education, and past work experience allow him or her to
perform a significant number of jobs in the national
economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

7

Remand

1.  Arguments of the Parties

Plaintiff argues the case should be remanded, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence (DN 14 PageID # 1484-85).   The evidence concerns Plaintiff's psychiatric hospitalization at Western State Hospital in August 2018 (Tr. 148-200), and records of June 8, 2018 through August 2, 2019 from Dr. Elmlinger regarding treatment of a chronic nonunion break at the base of the fifth metatarsal bone in her right foot (Tr. 78-101, 211-223).   Plaintiff contends the evidence from both sources is new because it was not before the ALJ at the time of decision (DN 14 PageID # 1484).   The evidence from Dr. Elmlinger is material because it indicates a more longstanding issue that the ALJ could appreciated at the time of decision (Id.).   The August 2018 records from Western State Hospital are material because they show her mental impairments are more severe than found by the ALJ in his October 12, 2018 decision (Id. PageID # 1485).   Plaintiff argues good cause exists for her failure to present the evidence prior to the ALJ's decision because the evidence arises from continued medical treatment after the administrative hearing (Id.).

Defendant asserts that Plaintiff has not demonstrated good cause for her failure to submit these records prior the ALJ's decision (DN 19 PageID # 1513-14).   Defendant points out that Plaintiff does not explain why the records were not obtained and submitted prior to the ALJ's decision, or why she did not request the record remain open until the records were submitted (Id. PageID # 1514).   Defendant claims these records are not new because they existed prior to the ALJ's decision (Id. PageID # 1514).   Defendant contends the evidence from Western State Hospital is not material because it is unlikely the ALJ would have reached a different decision (Id.

8

PageID # 1515).   Defendant asserts the evidence from Dr. Elmlinger is not material because it merely shows an aggravation or worsening of her foot condition (Id. PageID # 1515-16). Defendant asserts, to the extent the evidence postdates the ALJ's decision, it would not affect the ALJ's decision about whether Plaintiff was disabled on or before October 12, 2018 (Id. PageID # 1516).

  2.   Discussion

  "A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . ." Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006).   Under sentence six of 42 U.S.C. § 405(g), the Court does not address the correctness of the administrative decision.   Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991), Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006).   "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding."   Melkonyan, 501 U.S. at 98.   The party seeking this type of remand has the burden of demonstrating that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"   42 U.S.C. § 405(g); see also, Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174-175 (6th Cir. 1994).

  The Court will begin with the question of whether evidence from Western State Hospital and Dr. Elmlinger is "new."   Notably, both parties utilize the October 12, 2018 date of the ALJ's decision in assessing whether this evidence is "new" (see DN 14 PageID # 1484-85 and DN 19 PageID # 1513-15).

The Supreme Court of the United States has indicated that evidence is "new" if it was "not in existence or available to the claimant at the time of ***the administrative proceeding***." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990) (emphasis added); *see* Melkonyan, 501 U.S. at 98 (indicating that evidence is "new" if it was not available to the claimant at the time of the administrative proceeding). The Sixth Circuit uses "administrative proceeding" and "hearing" interchangeably in its discussion of the applicable law. *See e.g.* Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). Therefore, the Court will use the June 26, 2018 date of the administrative hearing, not the October 12, 2018 date of the ALJ's decision, in assessing whether the evidence from Western State Hospital and Dr. Elmlinger is "new."

The records from Western State Hospital address inpatient treatment Plaintiff received from August 16 through 20, 2018. These records are "new" because they were "not in existence" when the ALJ conducted the administrative hearing on June 26, 2018.

Two of the treatment notes from Dr. Elmlinger address Plaintiff's office visits on June 8 and June 22, 2018 (Tr. 221-23). These records are not "new" because they probably existed or were available to Plaintiff when the ALJ conducted the administrative hearing on June 26, 2018. Therefore, the motion for remand is denied as to the June 8 and June 22, 2018 treatment records of Dr. Elmlinger (Tr. 221-23).

The rest of the records from Dr. Elmlinger address office visits and surgical procedures that occurred after the ALJ conducted the administrative hearing on June 26, 2018 (Tr. 79-101,

10

211-20).[1]   These medical records are "new" because they were "not in existence" at the time the ALJ conducted the administrative hearing.

Evidence is "material" only if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Ferguson, 628 F.3d at 276; Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001); Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).  Notably, evidence is not considered material if it merely depicts an aggravation or deterioration in an existing condition after the date of the ALJ's decision.  Sizemore, 865 F.2d at 712.

The ALJ determined that Plaintiff's polysubstance abuse and bipolar disorder are severe impairments in Finding No. 3 (Tr. 241).  Additionally, the ALJ considered the restrictions imposed by both impairments in assessing Plaintiff's mental RFC in Finding No. 5 (Tr. 244-253).[2] The records from Western State Hospital are relevant to Plaintiff's polysubstance abuse and bipolar disorder (Tr. 149-200).  The question to be resolved is whether there is a "reasonable probability" that the ALJ would have reached a different disposition of Plaintiff's disability claim if the ALJ had the opportunity to consider this new evidence.   At the time of admission, Plaintiff was agitated, making threats to harm others, experiencing auditory and visual hallucinations, and experiencing paranoid thoughts (Tr. 162).  In order to sufficiently stabilize Plaintiff's condition

---

1 The treatment notes and surgical reports are dated August 31, 2018, October 16, 2018, October 24, 2018, November 7, 2018, November 21, 2018, December 21, 2018, January 18, 2019, February 15, 2019, March 15, 2019, April 12, 2019, May 10, 2019, June 7, 2019, June 27, 2019, July 5, 2019, July 19, 2019, and August 2, 2019 (Tr. 79-101, 211-20).

2 Specifically, the ALJ determined that Plaintiff is capable of performing a range of light work because she capable of simple routine one to four step tasks, no fast paced or quota driven work; she could tolerate occasional contact with co-workers and supervisors but no contact with the general public; any changes in work routine and environment would be rare and gradually introduced; and she can sustain concentration, persistence, and pace for two hours (Tr. 244).

for discharge into her own custody with follow up outpatient care through the Monroe County CCC/LifeSkills, doctors had to prescribe two antipsychotics, Abilify and Zyprexa, to augment Plaintiff's other psychotropic medications (Tr. 151, 155). This event may be considered an exacerbation of Plaintiff's mental disorder resulting in extreme limitations in all four areas of mental functioning known as the "paragraph B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. As the ALJ's decision addresses Plaintiff mental RFC from September 15, 2013 through October 12, 2018 (Tr. 239-54), and this evidence addresses the severity of Plaintiff's mental impairment in August 2018, the Court concludes there is a reasonable probability that the ALJ would have reached a different disposition of Plaintiff's disability claim if he had the opportunity to consider this new evidence at the time he issued the decision.

The records from Dr. Elmlinger, the treating orthopedist, concern a chronic nonunion break at the base of Plaintiff's fifth metatarsal bone ("Jones fracture") (Tr. 78-101, 211-223). The ALJ referred to this condition as a right toe fracture with nonunion and determined it is a severe impairment in Finding No. 3 (Tr. 241). The ALJ concluded that Plaintiff's nonunion fracture did not satisfy Listing 1.06 because she had not "shown the requisite complications or inability to ambulate effectively" (Tr. 242). Additionally, the ALJ considered the restrictions imposed by this impairment in assessing Plaintiff's physical RFC in Finding No. 5 (Tr. 244-253).[3] The ALJ

---

3 Specifically, the ALJ found this newly established physical impairment would support restricting Plaintiff to a range of light work that limited her occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolding; occasional use of the right lower extremity for operation of foot controls; and occasional exposure to dangerous machinery/unprotected heights (Tr. 244). "Occasional" means no more than two hours of an eight-hour workday. *See* SSR 96-9p.

primarily relied on records from Dr. Elmlinger[4] and Plaintiff's testimony,[5] in making these determinations (Id.).

The new evidence from Dr. Elmlinger indicates Plaintiff presented for a follow-up appointment on August 31, 2018 (Tr. 218-19).   She advised that a few weeks earlier she did not have the boot on while outside feeding some cows, she felt a pop in the right foot, and began experiencing increased pain in the right foot (Tr. 218).   While the last set of x-rays in June 2018 showed good signs of healing and the plate intact, the new x-rays indicated there was still a nonunion of the Jones fracture and the plate, inserted during the March 1, 2018 surgery, was broken at the level where the bone was healing (Id.).   Because Plaintiff was experiencing significant pain in the right foot and was having to use the boot to get around, Dr. Elmlinger recommended taking the broken plate out and redoing the open reduction internal fixation of the non-union (Id.).

---

4 Treatment notes from Dr. Elmlinger, the treating orthopedist, and Dr. Eakle, the primary care physician, suggest that Plaintiff may have sustained the break as early as March or February 2017 (Tr. 1028-29, 1081-87).   Dr. Eakle referred Plaintiff to Dr. Elmlinger, who diagnosed and conservatively treated a chronic nonunion break at the base of Plaintiff's fifth metatarsal bone ("Jones fracture") from April 14, 2017 through February 21, 2018 (Tr. 1019-29, 1220-23, 1242, 1254).   Approximately one year after the break occurred, on March 1, 2018, Dr. Elmlinger performed an open reduction internal fixation surgery to address the chronic nonunion Jones fracture (Tr. 1224, 1231-33, 1243-46).   Following the surgery, Plaintiff presented for post-surgical follow up appointments with Dr. Elmlinger on March 16, March 30, and May 18, 2018 (Tr. 1226-30, 1293-95).   The May 18, 2018 treatment note indicated Plaintiff had been walking on the right foot both inside and outside of the house, despite the doctor previously advising her to wear a boot inside the house and be non-weight bearing outside of the house (Tr. 1293-95).   Plaintiff reported that by the end of the day she experienced ball size swelling under the bottom of her right foot (Id.).   Dr. Elmlinger indicated the x-rays taken that day still showed the fracture line but the plate and screws were still well seated (Id.).   An examination revealed Plaintiff was still tender over the fifth metatarsal (Id.).   Due to concerns that Plaintiff was putting too much stress on the right foot and may fracture the hardware, Dr. Elmlinger recommended that Plaintiff limit weightbearing both inside and outside the house (Id.).

5 Plaintiff's testimony on June 26, 2018, adequately summarized the substance of the June 8 and June 22, 2018 office visits with Dr. Elmlinger (compare Tr. 317-18, 333-34, with Tr. 221-23).   Plaintiff testified that Dr. Elmlinger indicated the bone had started healing, she could stop using crutches in the house, she should start wearing the boot inside the house, and to continue using the crutches outside (Tr. 317-18).   Plaintiff conceded that she delayed the post-surgery healing process because she was not following the doctor's orders about use of the crutches and not standing/walking on her foot (Id.).   Plaintiff also indicated that prior to the surgery she was supposed to wear the boot and following the surgery she was told to stay off her foot (Tr. 318-19).   Plaintiff reported being able to drive since she fractured her toe (Tr. 319).   On reexamination by her counsel, Plaintiff indicated prior to surgery she could stand for half a day before experiencing swelling and pain (Tr. 333-34). Additionally, while sitting it would swell up and she would have to elevate her foot for a couple of hours (Id.).

Records show that Dr. Elmlinger performed a second surgery on October 16, 2018 (Tr. 216). Specifically, Dr. Elmlinger took the old hardware out, performed a second open reduction internal fixation surgery, and then put Plaintiff's right foot in a cast (Tr. 216). By this point, Plaintiff had experienced a chronic nonunion break at the base of her fifth metatarsal bone from March 2017 through October 16, 2018. That is approximately 19 months of nonunion with some level of weight bearing and boot wearing restrictions from Dr. Elmlinger.

The October 24, 2018, November 7, 2018, and November 21, 2018 treatment notes indicate following the second surgery Plaintiff remained in a cast with no weight bearing for nearly a month (Tr. 212-16). As of November 21, 2018, Dr. Elmlinger allowed weight bearing as tolerated in a walking boot at home but out of the house Plaintiff was to continue to be non-weight bearing (Tr. 212). The doctor's records also indicate follow-up office visits occurred on December 21, 2018, January 18, 2019, February 15, 2019, March 15, 2019, April 12, 2019, May 10, 2019, and June 7, 2019 (Tr. 79-92). They also indicate that Dr. Elmlinger preformed a third open reduction internal fixation surgery on June 27, 2019 because of broken hardware and the Jones fracture was still not healing (Tr. 99-101). The doctor's records also indicate post-surgical follow-up office visits occurred on July 5, 2019, July 19, 2019, and August 2, 2019 (Tr. 93-98).

The above described records, when viewed together with the evidence before the ALJ, demonstrate that Plaintiff has experienced a chronic nonunion break at the base of her fifth metatarsal bone from March 2017 through August 2, 2019. While the evidence suggests Plaintiff may satisfy the A criteria of Listing 1.06, it does not suggest she may satisfy the B criteria which requires an "[i]nability to ambulate effectively, as defined in 1.00B2b[,]" that lasts or is expected to last more than 12 months. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.06.

14

The new evidence also suggests that Dr. Elmlinger's weight bearing and boot wearing restrictions may substantially impact Plaintiff's ability to walk, an important exertional factor in assessing her physical RFC.    While the ALJ included some postural and environmental limitations to address Plaintiff's Jones fracture, the ALJ did not impose any limitation on Plaintiff's ability to walk (*see* Tr. 244, Finding No. 5).    In response to the hypothetical question setting forth the ALJ's RFC determination, the vocational expert identified the following jobs: housekeeping/cleaning (Dictionary of Occupational Titles No. 323.687-014 [*hereinafter* "DOT No."]); laundry linen grader (DOT No. 361.687-022); and garment folder (DOT No. 789.687-066) (Tr. 336).    The job descriptions for each of these jobs suggest Plaintiff would be standing and/or walking throughout an eight-hour workday.    With a limitation on Plaintiff's ability to stand and walk, it seems reasonable to conclude that Plaintiff would not be able to perform these three jobs. Therefore, there is a reasonable probability that the ALJ would have reached a different disposition of Plaintiff's disability claim if he had the opportunity to consider this new evidence from Dr. Elmlinger at the time he issued the decision.    Even if the ALJ's consideration is limited to Dr. Elmlinger's records of August and October 2018, it may be a closer call but it is still appropriate to conclude there is a reasonable probability that the ALJ would have reached a different disposition of the disability claim due to a limitation on Plaintiff's ability to walk.

"Good cause" is demonstrated by showing "a reasonable justification for *the failure to acquire and present the evidence for inclusion in the hearing* before the ALJ."   Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (emphasis added).   Clearly, this rule of law applies when the medical evidence is available at the time the ALJ conducts the administrative hearing.   The Sixth Circuit has also indicated that "good cause" is "shown if the new evidence arises from continued

medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." Koulizos v. Sec'y of Health & Human Servs., No. 85-1654, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) (citing Wilson v. Sec'y of Health & Human Servs., 733 F.2d 1181 (6th Cir. 1984) and Willis v. Sec'y of Health & Human Servs., 727 F.2d 551 (6th Cir. 1984)). This rule of law applies when the evidence is not available at the time the ALJ conducted the administrative hearing.   For example, in Wilson the medical evidence concerned treatment the claimant received months after the administrative hearing.   733 F.2d at 1182-83.

Defendant mistakenly relies on Bass v. McMahon, 499 F.3d 506, 513 (6th Cir. 2007) to support his argument that Plaintiff has not shown "good cause" because she fails to provide a reasonable justification for her failure to obtain and submit these medical records "*prior to the ALJ's October 2018 decision, or request the record remain open for such*" (DN 19 PageID # 1514, emphasis added).   But neither the facts nor the rule of law applied in Bass support Defendant's argument.   In Bass, the medical evidence from 2001, and March, April, and June 2004, predated the ALJ's hearing on October 28, 2004.   499 F.3d at 513.   The Sixth Circuit provided two reasons why it found a lack of "good cause."   Id.   First, the claimant had not detailed any obstacles that prevented him from entering this evidence before the ALJ conducted the hearing. Id.   Secondly, during the hearing, the claimant did not ask the ALJ to keep the record open so he could submit this medical evidence.   Id.   More importantly, the circumstances in Bass are distinguishable from those before the Court because the medical evidence at issue concerns treatment Plaintiff received months after the ALJ conducted the administrative hearing on June 26, 2018.   Therefore, the rule of law applied in Bass should not be applied here.

16

The circumstances here are more akin to those in <u>Wilson</u> because the medical evidence at issue here concerns treatment Plaintiff received months after the administrative hearing.    As such, the rule of law applied in <u>Wilson</u> will be applied here.    The new evidence here arises from continued medical treatment of Plaintiff's mental and physical conditions and was not generated merely for the purpose of attempting to prove disability.    *See* <u>Koulizos</u>, 1986 WL 17488, at *2; <u>Wilson</u>, 733 F.2d at 1182-83.    Therefore, Plaintiff has demonstrated "good cause."

In conclusion, Plaintiff has demonstrated that the evidence at issue is "new," "material," and that "good cause" exists for her failure to acquire and present the evidence for inclusion in the hearing before the ALJ.    Consequently, a prejudgment remand pursuant to sentence six of 42 U.S.C. § 405(g) is appropriate in this case.    Because a prejudgment remand is appropriate, the Court will not address Plaintiff's challenges to the RFC in the ALJ's decision.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that Plaintiff's request for a prejudgment remand, pursuant to sentence six of 42 U.S.C. § 405(g), is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **REMANDED**, pursuant to sentence six of 42 U.S.C. § 405(g), to the Commissioner for further proceedings involving consideration of the new and material evidence discussed above.

October 30, 2020

H. Brent Brennenstuhl
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

17